UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DON HATCHER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:04-0817 |
| RMR INVESTMENT COMPANY, | ) ) | Magistrate Judge Brown **Jury Demand** |
| Defendant. | ) | |

## **M E M O R A N D U M**

Presently pending before the Court is the defendant's motion for summary judgment (Docket Entry No. 16). After consideration of the briefs by the parties and the record, the motion is **GRANTED** for the reasons stated below. By separate order, the Court will dismiss this case with prejudice.

### **Standard of Review**

The Court has applied the well established standard for determining summary judgment motions. Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Chapman v. The Higbee Company, 2001 WL 753504 (6th Cir. 2001).

**Factual Background**

There are virtually no disputed facts in this matter. This recitation of factual material is taken from the complaint, the depositions of the witnesses, and the plaintiff's response to defendant's concise statement of material facts (Docket Entry No. 18).

The plaintiff is a disabled individual within the meaning of the Americans with Disabilities Act (ADA). The plaintiff intended to attend an educational function offered by Kaplan Learning Center (KLC), located at the Carmichael Place Shopping Center at 2404 West End Avenue, Nashville, Tennessee. This building is owned and operated by RMR Investment Co., LLC, (RMR). Mr. Hatcher wanted to attend a training course on the afternoon of July 28, 2004, offered by KLC. His daughter, in making the arrangements, notified KLC that her father was handicapped and would be in a wheelchair. She was assured that there was access to the second floor training room.

On the afternoon of July 28, 2004, when the plaintiff and his daughter arrived at the building, they found that the elevator to the second floor was inaccessible. Ms. Hatcher contacted Jennifer Hunter, the on-site representative of KLC, and informed her that the door to the lift was locked. Ms. Hunter determined that the elevator was inoperative and called Ann Hooven, who was the on-call representative for RMR Investment Co. Ms. Hooven routinely visited the property one to three times a week to check

2

on its condition and maintenance. It was admitted that RMR Investment Co. did not have any knowledge that the lift was not operating when the plaintiff arrived at the building on July 28, 2004.

Upon receiving the call from Ms. Hunter, Ms. Hooven immediately called Nashville Machine Elevator Co. and was informed that they would send a mechanic.

A mechanic from the Nashville Machine Elevator Co. did respond to the building while the seminar Mr. Hatcher was attending was still underway. The elevator company subsequently advised Ms. Hooven and Ms. Hunter that repairs could not be made that day. The elevator was repaired within the next 48 hours.

The records show that for the year 2004 RMR had placed only two maintenance calls to Nashville Machine Elevator for problems with the lift. One of those was to replace a battery, and the other was for lubrication of some parts. Nashville Machine Elevator also conducted an annual inspection of the elevator in order to retain the operating permit.

Ms. Hunter had initially assured Mr. Hatcher and his daughter that the elevator would be repaired prior to the end of the course, which apparently took something over two hours. Accordingly, Mr. Hatcher, with the assistance of his daughter, was able with some difficulty to climb the steps to the second floor. While the course was going on, Mr. Hatcher was notified that the elevator could not be repaired. At the end of the class, the matter was discussed between Ms. Hunter, plaintiff, and his daughter. It was determined to call an emergency response team

3

from the Metropolitan Government. A team comprised of three firemen responded within approximately 15 minutes. The team determined that the best way to assist Mr. Hatcher from the second floor to his vehicle would be to physically carry him in his wheelchair down the stairs. Unfortunately, in carrying out this operation one of the firemen slipped and Mr. Hatcher was injured in the subsequent fall. After the fall, Mr. Hatcher was carried the rest of the way down the stairs and placed back in his vehicle.

## Legal Discussion

In the Memorandum of Law in Support of the defendant's motion for summary judgment (Docket Entry No. 16-12), the defendant initially argues that the plaintiff has failed to come forth with any evidence to support a *prima facie* case that RMR violated the ADA. They contend that with the installation of the lift they complied with the ADA. They argue that the fact that the lift might be out of service for a 24-48 hour time period would not put them in violation of the Act where they acted immediately to have the elevator repaired upon being notified of the need.

They also argue that even assuming they were found to have violated Title III of the ADA, the plaintiff is not entitled to money damages under the plain language of the statute. Defendant cites 42 U.S.C. § 2000a-3, which states:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved. . .

4

Additionally, 42 U.S.C. § 12188, dealing with enforcement provides for injunctive relief for an individual who has a cause of action under the ADA. The Attorney General also has the ability to seek injunctive relief and where appropriate may request monetary damages. However, the monetary damages are only authorized when requested by the Attorney General. 42 U.S.C. § 12188(b)(2)(B).

Defendant argues that there is no authority for an individual plaintiff seeking relief under the ADA to secure any relief other than injunctive.

The plaintiff responds (Docket Entry No. 17) that this position is incorrect and that the Sixth Circuit has never addressed the issue. The plaintiff makes the argument that if monetary damages were not authorized there should be a Sixth Circuit case squarely so holding.

Surprisingly, there does not appear to be a Sixth Circuit case squarely on point. There are, however, cases in other jurisdictions which support the defendant's position. Anonymous v. Goddard Riverside Community Center, Inc., 1997 WL 475165 (S.D. N.Y. July 18, 1997), attached at Docket Entry No. 16-13, does hold that Title III of the ADA does not provide for a private cause of action for damages. Rather, it provides a procedure for preventive relief through injunctions. Accordingly, that court held that a plaintiff who alleges only past discrimination for which she seeks monetary damages fails to state a claim upon which relief can be granted.

5

In a state case from New York, <u>Lugo v. St. Nicholas Associates</u>, 772 N.Y.S. 2d 449 (N.Y. Sup.Ct. 2003), attached at Docket Entry No. 16-13, the court noted that the defendants had cited persuasive authority that the ADA does not create a private cause of action for damages. The state court went on to hold that in the case they had under consideration, the plaintiff did not appear to dispute the fact that the ADA did not provide a right of action for damages but argued that it may serve as a measure of the standard of care in a state law tort action.

Mr. Hatcher, in his federal complaint, has not alleged negligence but simply a violation of the ADA. Whether the ADA could provide any assistance in his state law negligence case against the Metropolitan Government or some other entity, is not before the court.

The Court, in reviewing this interesting legal issue, has not been able to find any case which recognizes the right for money damages under Title III of the ADA to an individual plaintiff. There are cases which strongly suggest that such a right does not exist. In <u>Washington Sports & Entertainment, Inc. v. United Coastal Insurance Co.</u>, 7 F.Supp.2d 1 (D.C. Cir. 1998), the court noted at page 8, "[the complaint] did not specifically seek compensatory damages. Indeed, the ADA does not create a civil cause of action for damages." Again, in passing the District Court in <u>Iverson v. Comsage, Inc.</u>, 132 F.Supp.2d 52 (D. Mass. 2001), at

6

footnote 1, noted that "Title III authorizes equitable relief but not money damages."

In Molski v. Mandarin Touch Restaurant, 347 F.Supp.2d 860 (C.D. Cal. 2004), the court was dealing with a plaintiff that apparently made a cottage industry of filing some 400 almost identical federal suits alleging violations of the ADA and attempting to combine them with state causes of action for monetary damages. The court noted at page 862,

> To enforce Title III, the ADA contains both a private right of action, 42 U.S.C. § 12188(a), and a right of action for the Attorney General, 42 U.S.C. § 12188(b). While the Attorney General may seek monetary damages on behalf of an aggrieved party, 42 U.S.C. § 12188(b)(2)(B), the only remedies available under the private right of action are injunctive relief and the recovery of attorneys' fees and costs. 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a). By providing different remedies for public and private enforcement, Congress clearly demonstrated its intent to prevent private plaintiffs from recovering money damages under the ADA. American Bus Ass'n v. Slater, 231 F.3d 1, 5 (D.C. Cir. 2000)("By specifying the circumstances under which monetary relief will be available, Congress evinced its intent that damages would be available in no others.")

In the case of American Bus Ass'n v. Slater, 231 F.3d 1 (D.C.Cir.2000), the court held that the Department of Transportation did not have statutory authority to adopt a rule imposing money damages on bus companies that failed to provide accessible service to disabled passengers. In that case, the court noted that the ADA's carefully crafted remedies scheme revealed the legislature's intent that the statute's enumerated remedies were to be exclusive, and thus a consequent intent to deny agencies the power to authorize supplementary monetary relief. The court noted

7

that if the remedies provided in 42 U.S.C. § 12188(a)(1) were not to be exclusive it would have provided such relief to an ADA plaintiff. American Bus Ass'n at 371. The court goes on to note that the remedies set forth in 42 U.S.C. § 2000a-3(a) do not include money damages. It was the court's conclusion that plaintiffs were entitled to a civil action for injunctive relief and that money damages were only available when the Attorney General requested them.

In Hobleman v. Kentucky Fried Chicken, 260 F.Supp.2d 801 (D.Neb. 2003), the court held,

> Title III of the ADA does not provide for monetary damages or, concomitantly, a jury trial, when the action is brought by a "person who is being subjected to discrimination." 42 U.S.C. § 12188(a)(2). [FN4] See also Gonzales v. National Bd. of Med. Examiners, 225 F.3d 620, 635 (6th Cir. 2000)(Gilman, J., dissenting)(stating that it "appears doubtful" that Title III plaintiffs are entitled to jury trial as Title III permits only injunctive relief)(citing cases); Smith v. WalMart Stores, Inc., 167 F.3d 286, 293 (6th Cir. 1999)(recognizing that Title III enforcement statute, 42 U.S.C. § 12188, which incorporates the remedies of 42 U.S.C. § 2000a-3(a), does not include money damages); see also Fischer v. SJB P.D., Inc., 214 F.3d 1115, 1120 (9th Cir. 2000)("Monetary relief is not an option for private individuals under Title III of the ADA. As a result, a plaintiff who files an ADA claim can at most hope to improve access through an injunction."); Jairath v. Dyer, 154 F.3d 1280, 1283 n. 7 (11th Cir. 1998)(noting that all parties agreed monetary damages are only available under Title III if cause of action initiated by Attorney General).
> (Footnote omitted.) See also Sigros v. Walt Disney World Co., 190 F.Supp.2d 165, 169 (D.Mass.2002)("Compensatory damages are not available to private plaintiffs under Title III of the ADA.")
>
> The plaintiff has stated an actionable claim for injunctive relief under Title III of the ADA, but in all other respects his complaint fails.

8

Id. at 805 (quoting Dorsey v. City of Detroit, 157 F.Supp.2d 729, 733 (E.D. Mich. 2001).

It must be noted that in this opinion, the Nebraska court cites two Sixth Circuit opinions for the proposition that Title III of the ADA does not authorize individual relief other than injunctive relief.

The Sixth Circuit case of Smith v. Wal-Mart Stores, Inc., 167 F.3d 286 (6th Cir. 1999), involves an individual who fell while attempting to use a non-ADA compliant restroom. The district court had held that since Congress had provided no damages remedy under Title III of the ADA, that the plaintiff in the Smith case could not obtain that relief through the backdoor by applying a per se negligence claim to his state damage claims. The Sixth Circuit, while noting at footnote 5 that § 12188(b) permits money damages to an aggrieved person only in a discrimination suit brought by the Attorney General, held that Georgia could incorporate the requirements of the ADA into its state law causes of action. Thus a violation of an ADA requirement could be the grounds for establishing negligence under state law. The Sixth Circuit reversed the district judge on the state law issue. However, the court did not disturb the district court's finding that Title III of the ADA did not by itself incorporate a private right of action for money damages.

Accordingly, this Court holds that under Title III of the ADA, there is no private right of action for monetary damages, and

thus that the plaintiff's complaint fails to state a cause of action.

In view of this ruling, the Court need not reach the issue of whether the plaintiff could make out a *prima facie* case in the event the ADA did allow for monetary damages. An order of dismissal will issue.

**ENTERED** this 23rd day of September, 2005.

<u>/s/ Joe B. Brown</u>
JOE B. BROWN
United States Magistrate Judge